# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JEFFREY A. CLOUSER, | § | |
| | § | No. 57, 2017 |
| Plaintiff Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No. N15C-07-240 |
| KIM DOHERTY, WAYNE A | § | |
| BARTON, LILLIAN LOWERY, | § | |
| MARK HOLODICK, PATRICK | § | |
| BUSH, JAMES SCANLON, | § | |
| BRANDYWINE SCHOOL | § | |
| DISTRICT, DELAWARE | § | |
| DEPARTMENT OF EDUCATION, | § | |
| CURRENT AND FORMER | § | |
| MEMBERS OF THE | § | |
| BRANDYWINE SCHOOL DISTRCT | § | |
| BOARD OF EDUCATION: DEBRA | § | |
| HEFFERNAN, OLIVIA JOHNSON- | § | |
| HARRIS, MARK HUXSOLL, | § | |
| PATRICIA HEARN, CHERYL | § | |
| SISKIN, RALPH ACKERMAN, | § | |
| JOSEPH BRUMSKILL, and DANE | § | |
| BRANDENBERGER, | § | |
| | § | |
| Defendants Below, | § | |
| Appellees. | § | |

Submitted: June 9, 2017
Decided: September 7, 2017

Before **VALIHURA**, **SEITZ**, and **TRAYNOR**, Justices.

**<u>ORDER</u>**

This 7th day of August 2017, upon consideration of the parties' briefs and record below,[1] it appears to the Court that:

(1)    The appellant, Jeffrey A. Clouser, filed this appeal from a Superior Court decision granting two motions to dismiss by separate groups of defendants—the first filed by Kim Doherty, Mark Holodick, Patrick Bush, James Scanlon, Brandywine School District, and current and former members of the Brandywine School District Board of Education: Debra Heffernan, Olivia Johnson-Harris, Mark Huxsoll, Patricia Hearn, Cheryl Siskin, Ralph Ackerman, Joseph Brumskill, and Dane Brandenberger (collectively, "the School Defendants"), and the second motion to dismiss filed by Wayne Barton, Lillian Lowery, and the Delaware Department of Education ("DDOE") (collectively, "the State Defendants").  We conclude that the Superior Court erred in dismissing the defamation and tortious interference claims against two of the State Defendants, but did not err in dismissing the remaining claims against the State Defendants nor all of the claims against the School Defendants.  Accordingly, we affirm in part and reverse in part.

---

[1] We do not consider the June 15, 2017 letter Clouser filed after his reply brief and the submission of this matter for decision.  Supr. Ct. R. 15(a)(vi) (providing that other than the opening brief and reply brief, the appellant shall not file any other writing with argument without leave of the Court).

2

(2)     According to the allegations of the complaint, Clouser began teaching in the Brandywine School District in 1991.[2]  On February 9, 2009, while teaching at Concord High School, Clouser was placed on administrative leave after a computer monitoring system report showed his inappropriate use of a school computer. School officials alerted the Delaware State Police who conducted a forensics investigation of Clouser's school computer.  According to a police report dated February 18, 2009 and approved by a supervisor on March 4, 2009 that summarized the results of their investigation, the police did not find any illegal images on Clouser's school computer.  This information was provided to Concord High School's School Resource Officer on February 23, 2009.  A supplemental police report dated April 16, 2009 reflected that no illegal images were found on Doherty's personal computer.  Doherty, who was the Director of Human Resources for the Brandywine School District, had used her personal computer to investigate the searches run on Clouser's school computer.

(3)     Clouser submitted a letter of resignation to Doherty on February 20, 2009.  Doherty received and time-stamped the letter.

---

[2] The facts stated in this Order are drawn from the complaint's allegations and are assumed to be true only for purposes of this appeal from a motion to dismiss. *Precision Air, Inc. v. Standard Chlorine of Del., Inc.*, 654 A.2d 403, 406 (Del. 1995).

(4)     In a letter dated March 5, 2009 sent to Clouser, ("the Doherty Letter") Doherty summarized the events leading to Clouser's placement on administrative leave.[3]  Doherty copied Holodick, then principal of Concord High School, and Ron Mendenhall, then principal of Hanby Middle School.  Clouser alleges that Doherty, contrary to the police report that she knew or should have known about by March 5, 2009, falsely accused him of searching for, accessing, and viewing child pornography.

(5)     Doherty also informed Clouser that if he did not agree to waive all claims concerning his employment, termination would be recommended at the Brandywine School District Board of Education's March 23, 2009 meeting.  Clouser was unwilling to agree to this condition, because he believed the School Defendants had wronged him.  According to Clouser, in another March 5, 2009 letter, Scanlon, then Superintendent of the Brandywine School District, stated the Brandywine School Board of Education accepted his resignation.

(6)     In a letter dated March 11, 2009, Barton, then Director of Professional Accountability for the DDOE, informed Clouser that the DDOE had received notice he was terminated by the Brandywine School District for misconduct and

---

[3] Throughout the complaint, Clouser quotes from and references letters and other materials that were not included with the complaint.  The defendants included copies of the letters and other materials with their motion to dismiss.  Because Clouser liberally relied on these letters and materials in his complaint, it is appropriate for the court to consider them on a motion to dismiss. *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 69-70 (Del. 1995).

4

immorality. Clouser was also notified that the DDOE had initiated a license disciplinary investigation under 14 *Del. C.* § 1218(g). At their March 23, 2009 meeting, the Brandywine School Board of Education voted to terminate Clouser because he did not accept the conditions for his resignation. In a letter dated April 8, 2009, Clouser's counsel informed Doherty that Clouser had resigned on February 20, 2009, and therefore could not be terminated.

(7)     While these events were unfolding, it appears that Doherty suggested to Clouser that he get counseling for his "self-sabotaging behavior."[4] Clouser went to a treatment center for counseling. Clouser was in treatment at Caron/Renaissance Center from February 28, 2009 to June 1, 2009. On July 31, 2009, Clouser met with Barton. Following the meeting, Barton sent an August 12, 2009 letter ("Barton Letter") to Lowery, who was then Secretary of Education. In the letter, Barton summarized his investigation of Clouser's termination.

(8)     According to Clouser, Barton made many false statements in the letter: (i) Barton inaccurately recounted that some students said Clouser must have been searching for pornography again; (ii) he falsely stated that the school district never heard the results of the police investigation; (iii) he falsely stated that Clouser attempted on more than one occasion to access pornography on the school's

---

[4] App. to State Defendants' Answering Br. at B42 (Compl. ¶ 144).

computer, and his claim that he was only looking for adult women was not credible; (iv) the letter from Clouser's in-patient counselor was not an endorsement of Clouser's fitness to teach; and (v) the letter and Clouser's demeanor during the interview left Barton concerned about Clouser being around children.[5] According to Clouser, the evidence shows he only used school computers on one occasion, he was only looking for adult women, the school district was aware of the police report and its conclusions, and the students' statements and Barton's opinion on the Caron/Renaissance Center counselor's letter and Clouser's demeanor were unsupported or untrue.

(9) Lowery sent a letter, dated September 21, 2009 ("Lowery Letter"), to Clouser and copied Barton, a Deputy Attorney General, and the executive director of the Delaware Professional Standards Board. According to Clouser, the letter falsely stated he attempted numerous times to access pornography websites, the websites were verified as child pornography sites, and he was unfit to teach. After receiving the Doherty Letter and Lowery Letter, Clouser requested a hearing before the Delaware Professional Standards Board because "he knew the defamatory accusations against him were not true and were based on false, exaggerated, and manipulated evidence."[6]

---

[5] *Id.* at B100-01 (Compl. ¶ 332).
[6] *Id*. at B56-57 (Compl. ¶ 192).

(10)   The hearing occurred on November 4, 2010.  According to Clouser, Doherty, Barton, and Bush, then Brandywine School District Director of Technology, lied at the hearing.  After the hearing, Clouser consented to a three-year suspension of his teaching license.

(11)   On August 26, 2013, in connection with the Pennsylvania Department of Education's ("PDOE") case against Clouser for reciprocal consequences from his license suspension in Delaware, Clouser received his personnel file from the PDOE. The PDOE had subpoenaed the file from the DDOE.  Upon receiving the personnel file, Clouser learned of the Barton Letter for the first time.  He also learned the National Association of State Directors for Teacher Education and Certification ("NASDTEC") website incorrectly stated his Delaware teaching license was suspended due to a criminal conviction.  After Clouser submitted Freedom of Information Act[7] requests to the DDOE regarding the wording on the NASDTEC website, the website changed the language to state Clouser's suspension was based on sexual misconduct that did not result in a criminal conviction.  Clouser alleges this information is still false because sexual misconduct is the abuse of another person, not the viewing of websites.

---

[7] Under the Delaware Freedom of Information Act, any person may request access to public records unless the records are protected from disclosure by an exemption.  29 *Del. C.* § 10001.

(12) Since reinstatement of his teaching license, Clouser has unsuccessfully applied for multiple teaching and coaching positions. Clouser alleges he was well-qualified for the positions. Even after interviews that he alleges went well, Clouser has not obtained permanent employment because he has been forced to disclose the 2009 events. Clouser has worked as a substitute teacher in the New Castle County public school districts since 2012. In October 2012, Doherty asked Clouser's staffing agency to remove him from the Brandywine School District's substitute teaching list.

(13) On July 30, 2015, Clouser filed a 116-page complaint alleging defamation, conspiracy, and tortious interference with prospective business relations. The defamation count was based on false statements in the Doherty Letter, the Barton Letter, the Lowery Letter, and the NASDTEC website. According to Clouser, Doherty, Barton, Lowery, and the DDOE made these false statements despite the contrary findings of the police, which they knew or should have known about. Clouser claimed the other defendants were liable for defamation because they supported the defendants who defamed him.

(14) Clouser further alleged the defendants conspired to terminate him in 2009, defame him at the November 4, 2010 Professional Standards Board Hearing, and prevent him from finding employment after reinstatement of his license. Finally, Clouser alleged the defendants tortiously interfered with his prospective business

8

relationships when: (i) he was terminated in 2009; (ii) Doherty asked Clouser's staffing agency not to assign Clouser to substitute teaching assignments in the Brandywine School District; (iii) Barton and the DDOE submitted false information to the NASDTEC website; and (iv) a principal's offer of a teaching position was withdrawn and other schools failed to offer Clouser a teaching position. Clouser contended the statute of limitations did not begin to run on these claims until August 26, 2013, when he received his personnel file from the PDOE and learned of the Barton Letter and incorrect information on the NASDTEC website.

(15) The School Defendants and the State Defendants moved to dismiss the complaint. The School Defendants argued: (i) the defamation claim was barred by the statute of limitations and failed to state a claim; (ii) the conspiracy claim was barred by the statute of limitations and privilege; and (iii) the tortious interference claim was barred by the statute of limitations and failed to state a claim.

(16) The State Defendants argued: (i) all of the claims were barred by sovereign immunity; (ii) the defamation claim was barred by the statute of limitations, the Barton Letter was protected by privilege, Clouser failed to state a claim, and Barton's conduct was protected by the State Tort Claims Act;[8] (iii) the

---

[8] 10 *Del. C.* § 4001.

conspiracy claim was barred by collateral estoppel and privilege; and (iv) the tortious interference claim was barred by the statute of limitations and failed to state a claim.

(17) In support of their sovereign immunity argument, the State Defendants filed an affidavit of Debra Lawhead, the Insurance Coverage Administrator of Delaware, stating the State and the DDOE had not purchased any insurance or established any self-insurance program that would apply to the events described in Clouser's complaint.[9] The Superior Court judge then-assigned to the case informed the parties that if the affidavit were considered, the motion to dismiss would have to be converted to a motion for summary judgment.[10] At the hearing on the motions to dismiss before a different judge, Clouser said he was not suggesting there was insurance when the Superior Court inquired about the affidavit.[11] The State Defendants argued the Superior Court could find sovereign immunity without the affidavit of no insurance, because Clouser identified no statutory or constitutional waiver of sovereign immunity by the State.[12]

(18) In an opinion dated December 28, 2016 and docketed on January 4, 2017, the Superior Court granted the motions to dismiss. As to the State Defendants, the Superior Court held Clouser's claims were barred by the doctrine of sovereign

---

[9] App. to State Defendants' Answering Br. at B159-60.
[10] *Clouser v. Doherty*, C.A. No. N15C-07-240, Filing ID 58219953 (Letter dated Nov. 25, 2015).
[11] App. to State Defendants' Answering Br. at B154.
[12] *Id.* at B156-57.

immunity, the defamation claim was barred by privilege, and Clouser failed to state a claim for conspiracy or tortious interference. As to the School Defendants, the Superior Court held Clouser's claims were barred by the statute of limitations and Clouser failed to plead a claim. This appeal followed.

(19) We review a trial court's grant of a motion to dismiss *de novo*.[13] In deciding a motion to dismiss under Rule 12(b)(6), the trial court must accept as true all well-pled allegations of facts and draw reasonable inferences in the plaintiff's favor.[14] A court is not, however, required to accept as true conclusory allegations "without specific supporting factual allegations"[15] or "every strained interpretation of the allegations proposed by the plaintiff."[16]

(20) On appeal, Clouser's arguments are summarized as follows: (i) the Superior Court erred in finding his claims against the State Defendants were barred by sovereign immunity; (ii) the Superior Court erred in finding his defamation claim against the State Defendants was barred by a conditional privilege; (iii) the Superior Court's separate treatment of the State Defendants and School Defendants caused the Superior Court to conclude erroneously that the statute of limitations barred his claims against the School Defendants; (iv) he stated a claim for conspiracy based on

---

[13] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).
[14] *Malpiede v. Townson*, 780 A.2d 1075, 1082 (Del. 2001).
[15] *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 65–66 (Del. 1995).
[16] *Malpiede*, 780 A.2d at 1083.

the defendants' collective conduct, his termination, and the November 4, 2010 hearing; and (v) he stated a claim for tortious interference based on the collective conduct of the defendants and his inability to obtain full time employment after employers checked his background. We first address the State Defendants' assertion of sovereign immunity.

**Claims Against the State Defendants**

### Sovereign Immunity

(21) "Sovereign immunity . . . is an absolute bar to liability claims against this State unless it is waived by the General Assembly."[17] The Superior Court held sovereign immunity barred Clouser's claims against the State Defendants because Clouser failed to identify an express waiver of sovereign immunity by the State.

(22) Clouser first argues the Superior Court erred because the State Defendants waived sovereign immunity. According to Clouser, the State Defendants violated Clouser's rights under 42 U.S.C. § 1983, DDOE rules and regulations regarding the maintenance and disclosure of employee records,[18] the Federal Privacy Act Regulations,[19] the State Employees', Officers', and Officials' Code of Conduct,[20] the Delaware Administrator Standards,[21] and the statute

---

[17] *Turnbull v. Fink*, 668 A.2d 1370, 1374 (Del. 1995).
[18] 14 *Del C.* § 122(b)(13), (25).
[19] 34 C.F.R. § 5(b).
[20] 29 *Del. C.* §§ 5801-5810a.
[21] 14 *Del. Admin. Code* § 1590.

protecting public employees reporting suspected violations of law,[22] which prohibits the discharge of a public employee who reports a violation of law to an elected official. Clouser did not allege violations of these statutes or regulations in his lengthy complaint or response to the States Defendants' motion to dismiss. The Superior Court never passed on any of these arguments because they were not raised below. His reference to 42 U.S.C. § 1983 in a footnote of his opposition to the State Defendants' Motion to Dismiss does not validly raise a § 1983 claim, which he asserts for the first time in his opening brief.[23] Clouser also argues for the first time on appeal that DDOE's participation in NASDTEC waives sovereign immunity. Because Clouser did not raise any of these arguments before the Superior Court, we will not consider them for the first time on appeal.[24]

(23) Clouser next argues that the Superior Court erred by ruling on sovereign immunity for the State Defendants on a motion to dismiss. According to Clouser, when the State Defendants raised the sovereign immunity defense on a motion to dismiss and filed an affidavit of no insurance with their motion, the State Defendants' motion should have been converted into a motion for summary

---

[22] 29 *Del. C.* § 5115.

[23] *Sabree Envtl. & Constr., Inc. v. Summit Dredging, LLC*, 2016 WL 5930270, at *1 (Del. Oct. 12, 2016) ("[S]tandalone arguments in footnotes are usually not considered fairly raised in any court.").

[24] Supr. Ct. R. 8.

judgment. Relying on *Pajewski v. Perry*,[25] Clouser argues that, before the court decided the summary judgment motion, he was entitled to explore the details of the State's purchase of insurance. Although Clouser's reliance on *Pajewski* for broad discovery concerning the State's insurance program is misplaced,[26] we conclude the Superior Court erred in dismissing the claims against the State Defendants on the grounds of sovereign immunity.

(24)  In Delaware, the defense of sovereign immunity "was established initially by our first Constitution and has been continued thereafter by successive Constitutions."[27] Under Article I § 9 of the Delaware Constitution, the State cannot be sued without its consent.[28] Thus, "the only way to limit or waive the State's sovereign immunity is by act of the General Assembly."[29]

(25)  Under 18 *Del. C.* § 6511, "[t]he defense of sovereignty is waived and cannot and will not be asserted as to any risk or loss covered by the state insurance coverage program, whether same be covered by commercially procured insurance or by self-insurance." The State has an insurance coverage program in place to cover

---

[25] 363 A.2d 429, 436 (Del. 1976) (holding State was not entitled to dismissal of a complaint just by showing there was no insurance coverage, but also had to provide all facts regarding how the insurance coverage committee met its obligations under 18 *Del. C.* §§ 6501-6543 *et seq.*).

[26] In *Doe v. Cates*, this Court held trial courts did not have to conduct a new inquiry into the insurance coverage committee's efforts to meet its responsibilities under 18 *Del. C.* §§ 6501-6543 each time the State asserted the defense of sovereign immunity. 499 A.2d 1175, 1179 n.4 (Del. 1985).

[27] *Shellhorn & Hill, Inc., v. State*, 187 A.2d 71, 73 (Del. 1962).

[28] *Sherman v. State*, 133 A.3d 971, 975 (Del. 2016); *Cates*, 499 A.2d at 1176.

[29] *Cates*, 499 A.2d at 1176 (citing *Shellhorn & Hill, Inc.*, 187 A.2d at 74-75).

some losses.[30]  When the State's insurance coverage program does not cover the loss, however, the State typically files an affidavit of no insurance coverage—as it did here—to show it has not waived sovereign immunity under § 6511.[31]  Before it can consider the affidavit of no insurance, which is outside of the complaint, the Superior Court must give notice of its intent to convert the motion to dismiss into a summary judgment motion.[32]  If the plaintiff asserts a sufficient basis in a Rule 56(f) affidavit to contest the affidavit of no insurance, she can pursue narrow and limited discovery into the statements in the affidavit of no insurance.[33]

(26)  Here, the State Defendants filed an affidavit of no insurance.  The Superior Court, however, did not consider the affidavit.  Instead, the Superior Court required Clouser on a motion to dismiss to "proffer[] an express waiver of sovereign

---

[30] 18 Del. C. §§ 6501-6543; App. to State Defendants' Answering Br. at 159 (Lawhead Aff. ¶ 2).
[31] *See, e.g.*, *Kesting v. River Rd. Swimming Club*, 2014 WL 7149728, at *2 (Del. Super. Ct. Dec. 15, 2014) (holding State was entitled to summary judgment based on lack of waiver of sovereign immunity under § 6511 due to affidavit demonstrating lack of insurance coverage); *Estate of Williams v. Corr. Med. Servs., Inc.*, 2010 WL 2991589, at *4 (Del. Super. Ct. July 23, 2010) ("Generally, defendants asserting sovereign immunity often submit affidavits from state officials indicating that the State has not obtained insurance to cover the litigated loss. While such documentation had not been provided to the Court prior to the hearing on these motions, it was provided during the hearing to counsel and there appears to be no dispute that the State has not contracted for insurance to cover these risks.  As such, sovereign immunity will prevent this action from proceeding against DOC and the motion for judgment on the pleadings as to DOC is granted.") (internal citations omitted); *Tomei v. Sharp*, 902 A.2d 757, 770 (Del. Super. Ct. 2006) (dismissing breach of implied covenant claim based upon affidavit of no insurance coverage); *Deputy v. Roy*, 2003 WL 367827, at *3 n.24 (Del. Super. Ct. Feb. 20, 2003) (declining to address whether warden was entitled to sovereign immunity because he did not produce an affidavit in compliance with § 6511).
[32] *Furman v. Del. Dep't of Transp.*, 30 A.3d 771, 774 (Del. 2011).
[33] *Id.* at 775.

immunity."[34] Because he failed to point to an express waiver, such as insurance coverage for his claims under § 6511, the court upheld the State Defendants' assertion of sovereign immunity and dismissed his claims.

(27) We find that the Superior Court erred by requiring Clouser to plead insurance coverage under § 6511 for his claims. When the State asserts on a motion to dismiss that sovereign immunity has not been waived under § 6511, it must rely on a review of its insurance program and the coverages available. The plaintiff cannot reasonably be expected to know what is and is not covered by the State's insurance program. Instead, as is typically done, and as was done here, when the State claims that its insurance program does not cover potential claims, it must back up the defense with an affidavit from the Insurance Administrator confirming the absence of insurance coverage under the insurance program for the potential loss. Then, on notice and after converting the motion to dismiss into a summary judgment motion, the Superior Court can consider the affidavit and any challenge the plaintiff might make to its assertions.[35]

(28) Given the affidavit the State Defendants filed with the court, they may be able to demonstrate that the defense of sovereign immunity can be asserted due

---

[34] *Clouser v. Doherty*, C.A. No. N15C-07-240, op. at 6 (Del. Super. Ct. Jan. 4, 2017).

[35] We reiterate that any discovery the Superior Court might grant under Superior Court Civil Rule 56(f) relating to insurance coverage is extremely narrow and limited to the statements made in the State's affidavit of no insurance. After limited discovery, the Superior Court would be acting within its discretion to permit the State Defendants to file a motion for summary judgment on the sovereign immunity issue.

to the lack of insurance covering Clouser's claims. The Superior Court must also evaluate whether the individual State Defendants were acting in their official as opposed to their individual capacity.[36] But, at this stage of the proceedings—namely, a motion to dismiss—it was error to require Clouser to demonstrate insurance coverage under § 6511 when the State has the unique knowledge about the coverage of its insurance programs. The Superior Court's error was not harmless because, as discussed below, we conclude Clouser stated claims for defamation and tortious interference with prospective business relations against Barton and the DDOE.

**Defamation**

(29) We next turn to Clouser's defamation claim against the State Defendants. The elements of a defamation claim are: (i) a defamatory communication; (ii) publication; (iii) the communication refers to the plaintiff; (iv) a third party's understanding of the communication's defamatory character; and (v) injury.[37] The Superior Court ruled that Clouser's lengthy complaint pleads the

---

[36] Sovereign immunity only protects individual state actors who take actions in their official capacities. *See, e.g.*, *Haskins v. Kay*, 2008 WL 5227187, at *2 (Del. Dec. 16, 2008) (reversing Superior Court's dismissal of claim against defendant in his individual capacity, but affirming Superior Court's dismissal of claim against defendant in his official capacity based on lack of insurance coverage and lack of waiver of sovereign immunity); *Walls v. Dep't of Corr.*, 1989 WL 25927, at *1 (Del. Super. Ct. Mar. 2, 1989) (finding sovereign immunity was not waived based on no insurance affidavit and dismissing claims against the Warden and the Commissioner in their official capacities), *aff'd*, 567 A.2d 424 (Del. 1989).

[37] *Bloss v. Kershner*, 2000 WL 303342, at *6 (Del. Super. Ct. Mar. 9, 2000), *aff'd*, 2001 WL 1692160 (Del. Dec. 21, 2001).

17

necessary elements of a defamation claim relating to the Barton Letter and the NASDTEC website information.[38] But, the court accepted the State Defendants' defense of privilege.[39]

(30) The Superior Court held it could not conclude, on a motion to dismiss, that the defamation claims based on the Barton Letter and NASDTEC website were time-barred. The Superior Court found that, based on the complaint's allegations, Clouser could not be held to have known about the Barton Letter, that the Barton Letter was sent to PDOE, or that there was false information on the NASDTEC website before he received this information from the PDOE on August 26, 2013.

(31) Clouser filed his complaint on July 30, 2015. Under the discovery rule, the statute of limitations does not begin to run until "the discovery of facts 'constituting the basis of the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery' of such facts."[40] Clouser alleged he was unaware of the Barton Letter and NASDTEC website information until August 26, 2013. At this stage of the proceedings, Clouser's allegations about the time of discovery support his claim that the statute should be tolled, and thus the Superior Court did

---

[38] *Clouser*, C.A. No. N15C-07-240, op. at 8-9.

[39] 10 *Del. C.* § 8119; *DeMoss v. News Journal Co.*, 408 A.2d 944, 945 (Del. 1979).

[40] *Coleman v. PricewaterhouseCoopers, LLC*, 854 A.2d 838, 842-43 (Del. 2004) (quoting *Becker v. Hamada, Inc.*, 455 A.2d 353, 356 (Del. 1982)).

not err in concluding Clouser's defamation claims based on the Barton Letter and NASDTEC website were not time barred. We also note that the Superior Court did not err in dismissing this claim as to Lowery because, other than receiving the Barton Letter, Clouser did not allege that she had any involvement in that letter or the incorrect information on the NASDTEC website.

(32) The Superior Court did not expressly address Clouser's defamation claim based on the Lowery Letter, but that claim was barred by the two-year statute of limitations. Clouser alleges that he requested the November 4, 2010 hearing because "he knew the defamatory accusations against him [in the Doherty Letter and the Lowery Letter] were not true and were based on false, exaggerated, and manipulated evidence."[41] He was thus on notice of any defamation claim based on the Lowery Letter long before his receipt of the NASDTEC website information and the Barton Letter on August 26, 2013.

(33) The Superior Court further held the defamation claim as to the Barton Letter was subject to dismissal because it was conditionally privileged as part of an investigation under 14 *Del. C.* § 1218 and also part of a mandatory disclosure to the PDOE. Clouser appears to argue this was error because the State Defendants knowingly provided false information in violation of various statutes. A conditional privilege does exist to protect individuals from defamation claims when involved in

---

[41] App. to State Defendants' Answering Br. at B56-57 (Compl. ¶ 192).

19

official investigations.[42] But, "[a] conditional privilege must be exercised 'with good faith, without malice and absent any knowledge of falsity or desire to cause harm.'"[43] "Whether a conditional privilege has been abused is ordinarily a question of fact."[44] This Court has held that conditional privilege is an affirmative defense that ordinarily should not be considered on a motion to dismiss.[45]

(34) Clouser alleges that Barton prepared the Barton Letter with malice and reckless disregard for the truth. To support this conclusion, Clouser alleges that Barton was aware or should have been aware of: (i) the findings in the 2009 police report that illegal images were not present; (ii) the actual information in the school computer logs showing only a limited number of adult internet searches; (iii) the unreliability of the anonymous student statements about his propensity to look at pornographic material; (iv) the falsity of statements about the school district's lack of knowledge of the results of the police investigation; and (v) the lack of any basis to express concern about Clouser being around children.[46] Further, Clouser alleges that the DDOE and Barton intentionally sent false information to NASDTEC that was published on the NASDTEC website.[47] While we are skeptical of the reliability of these allegations, we must accept them as true when reviewing a motion to

---

[42] *Meades v. Wilmington Hous. Auth.*, 2005 WL 1131112, at *2 (Del. May 12, 2005).
[43] *Id.* (quoting *Burr v. Atl. Aviation Corp.*, 348 A.2d 179, 181 (Del. 1975)).
[44] *Id.*
[45] *Id.*; *Klein v. Sunbeam*, 94 A.2d 385, 392 (Del. 1952).
[46] App. to State Defendants' Answering Br. at B39-44 (Compl. ¶¶ 134-49).
[47] *Id.* at B11, B30-31, B111 (Compl. ¶¶ 31, 107-08, 407).

dismiss. Clouser has raised disputed issues of fact about the good faith exercise of the privilege. Thus, we conclude the Superior Court erred in dismissing the defamation claim on the grounds of conditional privilege.[48]

(35)  For similar reasons, at the motion to dismiss stage, the same conduct would not be protected by the State Tort Claims Act.[49]  Under the State Tort Claims Act, a state employee has qualified immunity from liability when: (i) the alleged act or failure to act arose out of and in connection with the performance of official duties involving the exercise of discretion; (ii) the act or failure to act was done (or not done) in good faith; and (iii) the act or failure to act was done without gross negligence.[50]  Under the statute, the burden rests with the plaintiff to prove the absence of any of the three elements.[51]

(36)  As noted above, Clouser alleges that Barton prepared the Barton Letter with malice and reckless disregard for the truth, and intentionally sent false information to the PDOE.  Although these allegations are tenuous, we, like the Superior Court, cannot dispute their accuracy right now.  Under the plaintiff-friendly standards applied on a motion to dismiss,[52] they are sufficient to raise reasonably

---

[48] It may be that, after the record is developed, Clouser is unable to support the facts in the complaint underlying his claim of bad faith by the State Defendants.  If so, the conditional privilege could be decided on summary judgment.

[49] 10 *Del. C.* § 4001.

[50] *Id.*

[51] *Id.*

[52] *Malpiede*, 780 A.2d at 1082.

21

conceivable claims of a lack of good faith and possible gross negligence to survive a motion to dismiss. After further development of the record, these allegations may prove unsupported, and Barton might be entitled on summary judgment to qualified immunity. But, the Superior Court erred in dismissing these claims at this stage of the proceedings.

**Conspiracy**

(37) We next address Clouser's conspiracy claim. The elements of a civil conspiracy claim are: (i) a confederation or combination of two or more persons; (ii) an unlawful act done in furtherance of the conspiracy; and (iii) actual damage.[53] In the absence of an actionable wrong, a civil conspiracy claim will fail.[54] The Superior Court dismissed Clouser's conspiracy claim because he failed to allege specific facts showing a conspiracy, and his defamation claim was barred by sovereign immunity and privilege. On appeal, Clouser argues he stated a claim for conspiracy based on the collective grouping of the defendants, the defendants' wrongful actions against him in the process leading to his termination, the defendants' wrongful conduct at the November 4, 2010 hearing, and his defamation claim.[55]

---

[53] *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149-50 (Del. 1987).
[54] *Connolly v. Labowitz*, 519 A.2d 138, 143 (Del. 1986).
[55] In his complaint, Clouser also alleged the defendants engaged in a conspiracy to tortiously interfere with his employment opportunities. Clouser does not make this argument in his opening brief and has therefore waived this claim. Supr. Ct. R. 14(b)(vi)(A)(3) ("The merits of any

22

(38) Although we find Clouser stated a defamation claim against the DDOE and Barton, his conspiracy claims are primarily based on his termination in 2009 and the November 4, 2010 hearing. Those claims are time-barred regardless of whether a two-year or three-year statute of limitations applies.[56] Clouser's complaint shows he was on notice of the defendants' wrongdoing relating to his termination in 2009 and wrongdoing relating to his license suspension in 2010.

(39) As to his termination, Clouser alleged that his counsel challenged his termination in April 2009 on the grounds that Clouser could not be terminated because he had already resigned.[57] Clouser also alleged that he would not waive claims relating to his employment as demanded by the School Defendants because he believed they had engaged in wrongdoing.[58] As to the November 4, 2010 hearing, Clouser alleged that he requested the hearing because "he knew the defamatory accusations against him [in the Doherty Letter and Lowery Letter] were not true and

---

argument that is not raised in the body of the opening brief shall be deemed waived and will not be considered by the Court on appeal.").

[56] *Compare* 10 *Del. C.* § 8106(a) (providing "no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action") *and Atlantis Plastics Corp. v. Sammons*, 558 A.2d 1062, 1064 (Del. Ch. 1989) (applying analogous statute of limitations period under 10 *Del. C.* § 8106 to conspiracy claim) *with* 10 *Del. C.* § 8119 ("No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained . . . .") *and Jensen v. Wharton*, 1994 WL 649303, at *1 (Del. Super. Ct. 1994) (applying § 8119 to conspiracy claim).

[57] App. to State Defendants' Answering Br. at B84 (Compl. ¶ 282).

[58] *Id.* at B80 (Compl. ¶ 270).

were based on false, exaggerated, and manipulated evidence."[59]  Clouser's receipt

of the Barton Letter and false information on NASDTEC website does not revive

conspiracy claims he knew about in 2009 and 2010.  Clouser's remaining allegations

of conspiracy are conclusory and fail to state a claim.  Thus, the Superior Court did

not err in dismissing the conspiracy claim against the State Defendants.

**Tortious Interference with Prospective Business Relations**

(40)  We now turn to Clouser's tortious interference with prospective

business relations claim against the State Defendants.  The elements of a claim for

tortious interference with prospective business relations are: (i) the reasonable

probability of a business opportunity; (ii) intentional interference by a defendant

with that opportunity; (iii) proximate causation; and (iv) damages.[60]  Tortious

interference with prospective business relations is subject to a three-year statute of

limitations.[61]  The Superior Court held Clouser failed to state a claim for tortious

interference against the State Defendants because: (i) he failed to allege specifically

the reasonable probability of a business opportunity that ended because of the actions

of the State Defendants; (ii) failed to allege specifically their knowledge of his career

---

[59] *Id.* at B56-57 (Compl. ¶ 192).
[60] *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153 (Del. 1981).
[61] 10 *Del. C.* § 8106; *SmithKline Beecham Pharm. Co. v. Merck & Co., Inc.*, 766 A.2d 442, 450 (Del. 2000).

24

prospects; and (iii) failed to allege how they intentionally interfered with his career prospects.

(41) On appeal, Clouser argues the Superior Court erred in dismissing his tortious interference claim because the defendants should have been viewed as one entity instead of split into groups. Clouser does not cite any relevant authority in support of this proposition and fails to explain why the actions of one defendant should be attributed to all sixteen defendants. He also argues that he included factual information about job prospects he lost after potential employers checked his background.

(42) Viewing the facts in the light most favorable to Clouser, the complaint states a claim for tortious interference with prospective business relations against the DDOE and Barton based on the information on the NASDTEC website that Clouser learned of in August 2013. In the complaint, which we must accept as true at this stage of the proceedings, Clouser alleged that DDOE and Barton provided false information (that Clouser engaged in sexual misconduct and had a criminal conviction) to the NASDTEC website, which prospective employers, including school district authorities, use to guide hiring decisions. According to Clouser, after his suspension ended, he was denied full-time employment opportunities—one of which was denied after an offer from a school principal—as a result of the

NASDTEC website information.[62]  Thus, Clouser sufficiently stated a claim for interference with prospective business relations.  The Superior Court did not err, however, in finding that Clouser failed to state a claim for tortious interference against Lowery.  Clouser did not allege any wrongful interference by Lowery within the statutory time period for this claim.

**School Defendants**

### Defamation and Conspiracy

(43)  We now turn to Clouser's claims against the School Defendants.  The Superior Court concluded that Clouser's defamation claim against the School Defendants, which was based on the Doherty Letter, was barred by the two-year statute of limitations because Clouser and others received the letter in March 2009.  Clouser did not file his complaint until July 30, 2015.  Clouser acknowledges that he was well-aware of the School Defendants' alleged defamation more than five years before he filed his complaint.  In his complaint, he alleges that he requested the November 4, 2010 hearing because "he knew the defamatory accusations against him [in the Doherty Letter and Lowery Letter] were not true and were based on false, exaggerated, and manipulated evidence."[63]  He was thus on notice of the School

---

[62] App. to State Defendants' Answering Br. at B11, B15, B17, B88-90, B111 (Compl. ¶¶ 31, 51, 59, 294-300, 407).

[63] *Id.* at B56-57 (Compl. ¶ 192).

Defendants' alleged defamation well before the two-year statute of limitations expired in March 2011.

(44) On appeal, Clouser argues that all of the defendants should be considered as one group and the statute of limitations should be tolled for all of the defendants due to continuing wrongs by individual defendants within the group. None of the cases cited by Clouser support his argument. In *Havens Realty Corp. v. Coleman*,[64] the United States Supreme Court held "that where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within 180 days of the last asserted occurrence of that practice." In *Henlopen Landing Homeowners Ass'n v. Vester*,[65] the Court of Chancery held the maintenance of an allegedly retaliatory lawsuit under the Fair Housing Act did not constitute a continuing violation under *Havens*. In *Ewing v. Beck*,[66] this Court recognized that under the doctrine of continuing negligent medical treatment ("a continuum of negligent medical care related to a single condition occasioned by negligence"), the statute of limitations runs from the last date of the interrelated negligent medical treatment. In *Desimone v. Barrows*,[67] the Court of

---

[64] 455 U.S. 363, 380-81 (1982) (citations omitted).
[65] 2015 WL 5316864, at *3 (Del. Ch. Sept. 14, 2015).
[66] 520 A.2d 653, 662 (Del. 1987) (emphasis omitted).
[67] 924 A.2d 908, 926 (Del. Ch. 2007) (rejecting application of continuing wrong doctrine to allow plaintiff to challenge wrongs predating his stock ownership and stating that each of the alleged wrongs could be easily segmented).

Chancery declined to apply the continuing wrongs doctrine to allow the plaintiff to challenge wrongs predating his stock ownership, finding that each of the alleged wrongs could be easily segmented.

(45) Nor do any of these cases support application of the continuing wrong doctrine. The alleged wrongs here are dissimilar to discriminatory housing practices under the Fair Housing Act or a continuing course of medical treatment. The alleged wrongs in this case are also easily segmented—false statements by different defendants, in different documents. Even if Clouser was not aware of the Barton Letter and incorrect information on the NASDTEC site until August 2013, he does not identify defamatory statements by any of the School Defendants after 2010. Thus, the Superior Court did not err in finding the statute of limitations barred Clouser's defamation claim against the School Defendants. Clouser's conspiracy claim against the School Defendants fails for the same reasons as the conspiracy claims against the State Defendants.[68]

**Tortious Interference with Prospective Business Relations**

(46) Finally, we address Clouser's tortious interference with prospective business relations claim against the School Defendants. The Superior Court found that to the extent this claim was based on Clouser's wrongful termination in 2009, it was barred by the three-year statute of limitations. To the extent this claim was

---

[68] *See supra* ¶¶ 38-39.

based on Doherty's request that Clouser's staffing agency remove him from the substitute teacher list for the Brandywine School District, the Superior Court held that Delaware does not recognize a claim for tortious interference with an at-will employment relationship,[69] and Clouser failed to plead a claim for tortious interference with a third party prospective employer. As to Clouser's allegations that his failure to find full time employment was a result of the School Defendants' tortious interference, the Superior Court held Clouser failed to allege specifically the reasonable probability of a business opportunity that ended because of the actions of the School Defendants, failed to allege specifically their knowledge of his career prospects, and failed to allege how they intentionally interfered with his career prospects.

(47) On appeal, Clouser argues the Superior Court erred in dismissing his tortious interference claim because the defendants should have been viewed as one entity instead of split into groups. We have already rejected this argument. Thus, Clouser's claims relating to the November 4, 2010 hearing are barred by the statute of limitations.

---

[69] *Triton Constr. Co. v. E. Shore Elec. Servs., Inc.*, 2009 WL 1387115, at *17 (Del. Ch. May 18, 2009), *aff'd*, 988 A.2d 938 (Del. 2010). *But see ASDI, Inc. v. Beard Research, Inc.*, 11 A.3d 749, 751-52 (Del. 2010) (recognizing courts have found tortious conduct inducing the termination of an at-will employment contract actionable).

(48) Clouser also argues that he included factual information about job prospects he lost after potential employers checked his background. With the exception of his allegation concerning Doherty's contact with his staffing agency, however, Clouser fails to allege how the School Defendants interfered with his employment prospects since the November 4, 2010 hearing. As to his allegation regarding Doherty's contact with the staffing agency, we conclude that the Superior Court did not err in finding Clouser failed to allege interference with Clouser's prospective relationship with a third party prospective employer. Clouser alleged that Doherty asked his staffing agency not to place him with his previous employer, the Brandywine School District. He did not allege that Doherty's request interfered with his ability to work in another school district or caused his staffing agency to stop placing him in other school districts. Thus, his tortious interference claim was properly dismissed.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court dismissing Clouser's conspiracy claim against the State Defendants, the defamation and tortious interference claims against Lowery, and all of the claims against the School Defendants is AFFIRMED; the judgment of the Superior Court dismissing Clouser's defamation and tortious interference claims against Barton and DDOE is REVERSED, and the matter is REMANDED for further proceedings consistent with this order. Clouser may pursue limited discovery related to the

affidavit of no insurance. Clouser, Barton, and the DDOE may pursue targeted discovery related to Clouser's defamation and tortious interference with prospective business relations for the Barton Letter and NASDTEC website disclosures. Barton and the DDOE can renew their arguments for dismissal of the remaining claims on summary judgment if warranted. Jurisdiction is not retained.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Justice